UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| STEVEN M.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br><br> Defendant. | Case No. 19-cv-06991-RMI <br><br> **ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 17, 18 |

Plaintiff, seeks judicial review of an administrative law judge ("ALJ") decision denying his application for disability insurance benefits under Title II of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council, thus, the ALJ's decision is the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 8 & 11), and both parties have moved for summary judgment (dkts. 17 & 18). For the reasons stated below, Plaintiff's motion for summary judgment is granted, and Defendant's motion is denied.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

"substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## PROCEDURAL HISTORY

On September 29, 2016, Plaintiff filed an application for disability insurance benefits, alleging an onset date of October 7, 2015. *See* Administrative Record "*AR*" at 15.[2] As set forth in detail below, the ALJ found Plaintiff not disabled and denied the application on October 3, 2018. *Id*. at 15-27. The Appeals Council denied Plaintiff's request for review on August 23, 2019. *See id*. at 1-4. Thereafter, on October 25, 2019, Plaintiff sought review in this court (dkt. 1), contending that the ALJ improperly rejected the opinions of Plaintiff's treating physicians, as well as improperly rejecting Plaintiff's testimony and the testimony of his mother – consequently, Plaintiff submits that the ALJ's finding at Step Five is not supported by substantial evidence. *See* Pl.'s Mot. (dkt. 17) at 11-17. Defendant contends that Plaintiff has conflated his doctor's "work status reports" for medical opinions, and that substantial evidence otherwise supports the ALJ's assessment of Plaintiff's testimony and that of his mother, as well as the RFC assessment and the subsequent Step Five finding. *See* Def.'s Mot. (dkt. 18) at 3-9.

//

//

---

[2] The *AR*, which is independently paginated, has been filed in several parts as a number of attachments to Docket Entry #16. *See* (dkts. 16-1 through 16-20).

**SUMMARY OF THE RELEVANT EVIDENCE**

Plaintiff suffers from what his doctors characterize as "poorly controlled" diabetes, for which he has been hospitalized on numerous occasions since first being diagnosed at age 17; he also suffers from vision problems, and has a history of heart disease. *AR* at 1081. In line with Plaintiff's family history of heart attacks, he suffered his first one in 2015 when he was only in his mid-30s, followed quickly by another heart attack the following year. *Id*. After the second heart attack, Plaintiff underwent surgery for the installation of four stents in his coronary arteries. *Id*. Since the heart attacks, Plaintiff has experienced persistent dizziness, fatigue, and shortness of breath during even modest exertion (such as when he goes from a seated to a standing position). *Id*. at 1082. Due to the dizziness and loss of balance, Plaintiff has fallen on a number of occasions; consequently, he has greatly limited the frequency with which he leaves his home. *Id*. Thus far, no physician has been able to identify the etiology of his dizziness. *Id*. The dizziness and fatigue combine to preclude Plaintiff from engaging in any of his former hobbies or recreational activities; as a result, he spends most of his time at home where "[h]e lays on the couch and sleeps most of the day." *Id*. His most recent employment was in 2015, before his first heart attack, when he worked as a laborer in the construction industry. *Id*. at 1083. In 2015 and 2016, Plaintiff's treating physician, Ton Thai Hoang, M.D., directed that Plaintiff be "placed off work" for a period of time spanning from October 4, 2015, to August 21, 2016. *See id*. at 1205-1213.

Since his first heart attack, Plaintiff's treatment providers (including Dr. Hoang) routinely noted his persistent and chronic dizziness while standing, as well as his persistent fatigue, throughout 2015 and 2016. *See id*. at 412, 416, 433, 436, 509, 533-35, 539, 542, 544, 548, 582, 590, 597, 611, 634, 698. Thereafter, the persistent dizziness was noted throughout 2017 and 2018 as well. For example, in March of 2017, having been referred to Lisa Olsen, M.D., for a consultative evaluation, Dr. Olsen noted that because the etiology of Plaintiff's dizziness is still unknown and unclear, Plaintiff "would benefit from further evaluation from . . . a neurologist or a mental health professional." *Id*. at 1081-86. Then, in May of 2017, and again in March of 2018, Smita Gupta, M.D., noted that Plaintiff was still experiencing dizziness in the order of 5 times per day, generally during changes in posture. *Id*. at 1228, 1232-33. A few months after that, in July of

2018, another treating physician, Shahid Siddiqui, M.D., noted the persistence of Plaintiff's bouts of dizziness and problems with balance, while advising him to refrain from bending over. *Id*. at 1215-16.

*Function Reports*

In June of 2017, Plaintiff submitted a function report. *Id*. at 299-307. Therein, he noted that form the time he wakes up, until the time he goes to bed, he is unable to do much of anything due to shortness of breath and dizziness. *Id.* at 300. Plaintiff added that these symptoms interfere with his abilities in the following domains: lifting, squatting, bending, walking, kneeling, stair-climbing, and vision. *Id*. at 304. Plaintiff's mother also completed and submitted a function report, in which she noted that due to dizziness and his shortness of breath, Plaintiff is unable to engage in any activities that require exertion. *Id*. at 312. She added that the dizziness and shortness of breath interfered with Plaintiff's ability to: lift things, squat, bend, stand, walk, kneel, climb stairs, see clearly, and complete tasks. *Id*. at 313.

*Hearing Testimony*

On August 1, 2018, the ALJ conducted a hearing on Plaintiff's claim; in the course of which, the ALJ received testimony from Plaintiff, from a vocational expert ("VE"), and from Gilberto Munoz, M.D., a Chicago-based physician specializing in occupational medicine, formerly the team physician for the Chicago Fire professional soccer team. *See id*. at 34-90, 1198-99. In pertinent part, Plaintiff's testimony began with a description of some of his unsuccessful attempts to return to work at a feed store owned by his friend, stocking shelves on two occasions for a few hours and from a seated position; in this regard, he noted: "I did it twice and I just physically couldn't do it due to, you know, the disability state that I'm in right now." *Id*. at 38-42. When the ALJ asked Plaintiff to describe the health problems that undermine his ability to function in the workplace, Plaintiff responded: "I would say my dizzy spells that I get. I get lightheaded, my eyes." *See id*. at 53, 75.

Thereafter, Dr. Munoz testified and noted that he had reviewed Plaintiff's medical records. *Id.* at 65-66. Initially, the ALJ asked Dr. Munoz to opine as to whether or not any of Plaintiff's impairments met or equaled a listing, however, before Dr. Munoz could answer, the ALJ

4

interrupted him and the subject of conversation was changed to gauging Plaintiff's RFC. *See id*. at 65-66. When asked to opine about Plaintiff's RFC based on his review of the medical records, Dr. Munoz noted that Plaintiff would be restricted to the full range of sedentary work; with the ability to occasionally engage in the range of postural movements, but Plaintiff would be precluded from climbing ladders, ropes, or scaffolds; with no limitations for reaching, handling, or fingering; no limitations as to communicating, hearing, seeing, or speaking; Plaintiff should avoid working at unprotected heights, operating a vehicle for commercial purposes, or working around heavy machinery; and, Plaintiff can occasionally be exposed to dust, odors, fumes, pulmonary irritants, humidity and wetness, extreme cold or heat, and vibrations. *Id*. at 67-68

Next, the ALJ asked the VE if a hypothetical person with Plaintiff's background and experience, with the limitations described in the above-described RFC (but that would be expected to miss work more than four times a month due to diabetic neuropathy in the ankles), would be able to perform Plaintiff's past relevant work, or any work at all in the national economy. *Id*. at 84-86. The VE responded in the negative as to both questions. *Id*. at 86-87. The ALJ then modified the hypothetical to involve less than one absentee day per month; and the VE answered in the negative as to Plaintiff's prior relevant work because those jobs involved work at the medium and heavy exertional levels. *Id*. at 87. As to other jobs in the national economy, the VE opined that Plaintiff could do unskilled sedentary such as a document preparer or a bench hand. *Id*. at 87-88. Finally, upon questioning from Plaintiff's counsel, the VE conceded that if a person were to be off-task as little as 15 percent of the time, such a person would not be employable. *Id*. at 89.

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that he has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.[3] The ALJ must consider all evidence in

---

[3] The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II) are virtually identical though found in different sections of the CFR. For the sake of convenience, the court will generally cite to the SSI regulations herein unless noted otherwise.

the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five-step sequential evaluation process to determine whether the claimant is disabled (*see id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ set forth the applicable law under the required five-step sequential evaluation process. *AR* at 16-17. At Step One, the claimant bears the burden of showing he has not been engaged in "substantial gainful activity" since the alleged date on which the claimant became disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *See id*. The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020, and that he had not engaged in substantial gainful activity since October 7, 2015. *AR* at 17. At Step Two, the claimant bears the burden of showing that he has a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). At Step Two, the ALJ found that Plaintiff suffered from the following severe impairments: coronary artery disease with a history of myocardial infarction in 2015 and 2016, status post multiple surgeries for stent placement; diabetes mellitus, type I, with hyperglycemia; chronic renal insufficiency and diabetic neuropathy. *Id*. at 17.

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing his impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments. *AR* at 19. Next, the ALJ determined that Plaintiff retained the RFC to perform

sedentary work with the following exceptions and limitations: he can lift and or carry 10 pounds occasionally, and less than 10 pounds frequently; he can stand and walk for at least two hours in an eight-hour day; he can sit for about six hours in an eight-hour day (with normal breaks); he can occasionally climb ramps or stairs, but he is precluded from climbing ladders, ropes, or scaffolds; he can occasionally balance, stoop, crouch, kneel, or crawl; he has no manipulative, communicative, or visual limitations; he must avoid all exposure to unprotected heights as well as to large, dangerous, or moving machinery; and, he should be expected to be absent from work less than one day per month. *Id*. at 19-20. At Step Four, the ALJ determined that Plaintiff is unable to perform his past relevant work as a mechanic or an HVAC installer. *Id*. at 25. Next, at Step Five, based on the RFC as formulated, and the VE's testimony, the ALJ found that Plaintiff would be able to perform the requirements of a document preparer or a bench hand (as set forth in the Dictionary of Occupational Titles). *Id*. at 26-27. Thus, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since October 15, 2015. *Id*. at 27.

## DISCUSSION

Plaintiff contends that the ALJ in this case did not discharge his duty to properly develop the record regarding two things: (1) Plaintiff's persistent dizziness, fatigue, and shortness of breath; and (2) Dr. Hoang's implementation of a strict work-restriction for Plaintiff from October of 2015 to August of 2016. *See* Pl.'s Mot. (dkt. 17) at 10, 12, 14, 16. In response, Defendant suggests that only ambiguous evidence triggers the duty to develop the record, and that Dr. Hoang's statement was clear and unambiguous, and thus the record did not need any further development in this regard. *See* Def.'s Mot. (dkt. 18) at 4. Beyond that, Defendant submits that the RFC's focus on sedentary work should more or less account for Plaintiff's experiences with dizziness in that such work "keeps him in a seated position for most of the day." *Id*. at 6.

It is well established that "[t]he ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1151 (9th Cir. 2001) (*quoting Smolen*, 80 F.3d 1273, 1288 (9th Cir. 1996)). Because administrative proceedings of this sort are inquisitorial in nature, the ALJ is not permitted to simply sit back and take the role of a mere umpire; instead, the ALJ must

7

scrupulously and conscientiously probe into the matter and actively explore for any and all relevant facts. *See Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) (citing *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992)). If there is so much as an ambiguity in the evidence, or if the ALJ – or a reviewing court – finds that the record is inadequate for proper evaluation of the evidence, such a finding likewise triggers the ALJ's duty to conduct an appropriate inquiry. *See Tonapetyan*, 242 F.3d at 1151 (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). Because Social Security proceedings are inquisitorial rather than adversarial, "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims*, 530 U.S. at 110-11 (citing Dubin, *Torquemada Meets Kafka: The Misapplication of the Issue Exhaustion Doctrine to Inquisitorial Administrative Proceedings*, 97 Colum. L. Rev. 1289, 1301-1305, 1325-1329 (1997)); *see also Richardson v. Perales*, 402 U.S. 389, 400-01 (1971) ("This, we think, is as it should be, for this administrative procedure, and these hearings, should be understandable to the layman claimant, should not necessarily be stiff and comfortable only for the trained attorney, and should be liberal and not strict in tone and operation. This is the obvious intent of Congress so long as the procedures are fundamentally fair.").

Accordingly, the ALJ must take reasonable steps to ensure that the issues and questions raised by the medical evidence are carefully and properly addressed, by an appropriate professional with the relevant professional background, so that the disability determination may be fairly made on a sufficient evidentiary record, whether favorable or unfavorable to the claimant. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1999); *see also Smolen*, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of [a doctor's] opinion[ ] in order to evaluate [it], he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physician[ ] or submitting further questions to [him or her]."). In fact, when it is necessary to enable the ALJ (and by extension, a reviewing court) to resolve a disability issue, the ALJ's duty to develop the record may require consulting a medical expert or ordering a consultative examination. *See Tonapetyan*, 242 F.3d at 1150 (the ALJ may develop the record in several ways, including by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record).

The record in this case is poorly developed. So much so that it is impossible for this court to determine whether or not the RFC or the determination at Step Five are supported by substantial evidence. First, it is unclear *why* Dr. Hoang opined that Plaintiff was unable to work at all between 2015 and 2016. Second, it is equally unclear whether or not, in Dr. Hoang's opinion, Plaintiff's inability to work continued beyond August of 2016. Third, is also unclear to what degree Plaintiff's persistent dizziness, fatigue, and shortness of breath interfere with (or preclude) his ability to function in the workplace – even with sedentary employment – because the ALJ did not explore these subjects to any substantial degree with Plaintiff or with the testifying medical expert. While the medical evidence is teeming with references to Plaintiff's pervasive dizziness and fatigue, there record is silent as to the effect of that dizziness on Plaintiff's ability to perform the requirements of the type of sedentary work as set forth by the ALJ's RFC. Thus, the deficiencies in the development of the record have hampered this court's ability to review the ALJ's findings.

On remand, the ALJ is **ORDERED** to conduct a second hearing: (1) in order to contact Dr. Hoang, by subpoena or otherwise, as part of an effort to resolve the above-mentioned ambiguities attending Dr. Hoang's instruction that Plaintiff refrain from working in 2015 and 2016; (2) in order to solicit an opinion from Dr. Hoang (or any of Plaintiff's treating physicians) regarding the nature and extent of the functional limitations attending Plaintiff's persistent dizziness, fatigue, and shortness of breath; and, (3) in order to take more substantial testimony from Plaintiff regarding the nature and extent of any functional limitations attending his fatigue, shortness of breath, and dizziness.

The court declines to address Plaintiff's remaining issues not only because they can be adequately addressed on remand, but also because the calculus underlying those issues will likely change on remand given the holdings expressed herein. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Gutierrez v. Comm'r of Soc. Sec.*, No. 18-cv-02348-RMI, 2019 U.S. Dist. LEXIS 165711, at *30-31 (N.D. Cal. Sep. 25, 2019); *Abdul-Ali v. Berryhill*, No. 18-cv-03615-RMI, 2019 U.S. Dist. LEXIS 138512, 2019 WL 3841995, at *7 (N.D. Cal. Aug. 15, 2019); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7

9

(C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."). On remand, the Commissioner is instructed to consider the other issues raised in Plaintiff's briefing and modify the ensuing ALJ opinion as appropriate. *See Cortes v. Colvin*, No. 2:15-cv-02277-GJS, 2016 U.S. Dist. LEXIS 40580, 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016); *Cochran v. Berryhill*, No. 3:17-cv-00334-SB, 2017 U.S. Dist. LEXIS 212380, at *21 (D. Or. Dec. 28, 2017).

## CONCLUSION

Thus, for the reasons stated above, Plaintiff's Motion for Summary Judgment (dkt. 17) is **GRANTED**, and Defendant's Cross-Motion (dkt. 18) is **DENIED**. The case is **REMANDED** for further proceedings pursuant to the instructions provided herein.

**IT IS SO ORDERED.**

Dated: March 19, 2021

ROBERT M. ILLMAN
United States Magistrate Judge